## IN THE UNITED STATES DISTRICT COURT
## FOR THE NOTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ERIC RIVERS, Individually, and | ) | |
| on behalf of himself, his company | ) | |
| Rivers Logistics LLC, | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: |
| | ) | |
| SOUTHWAY CARRIERS, INC. | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

1.      The plaintiff, Eric Rivers ("Plaintiff") on behalf of himself, his wholly owned company, Rivers Logistics LLC, and all others similarly situated, bring this action against the Defendant, Southway Carriers, Inc. ("Defendant"), as a Class Action, for: Count I, failing to comply with the Truth-in-Leasing regulation, 49 C.F.R. § 376.12; Count II, violating the Pass-Through of Motor Carrier Fuel Surcharge Adjustment to Cost Bearer regulation, 49 C.F.R. § 252.247-7003; Count III violating the Illinois Consumer Fraud Act 815 ILCS 505/2, Count IV for Breach of Contract, Count V for Equitable Accounting, Count VI for Unjust Enrichment, and Count VII for Conversion, to recover damages against the Defendant for knowingly and improperly entering lease agreements in violation of the Truth-in-Leasing regulations– 49 C.F.R. § 376.12 and withholding compensation owed to Plaintiff.

2.      These claims are based on the Defendant's failure to specify how Plaintiff and class members were compensated in the lease agreements, failure to specify the payment period in the lease agreements, failure to specify how each charge-back item was computed within the lease agreements, failure to clarify Plaintiff was under no obligation to purchase products from

1

Defendant in the lease agreement, failure to provide complete information about Plaintiff's escrow account, and failure to adhere to and perform the required lease provisions by, among other acts, wrongfully withholding compensation owed to Plaintiff and class members.

## PARTIES

3.      Plaintiff, Eric Rivers, is a citizen and resident of Durham, North Carolina. Plaintiff Rivers entered a written lease to purchase agreement with Defendant on June 7, 2021, for a 2017 Volvo truck and began completing trips for Defendant.

4.      Defendant, Southway Carriers, Inc., is a corporation and active registered motor carrier with the Department of Transportation organized under the laws of Illinois and has its chief executive offices and principal place of business at 17W735 Butterfield Rd, Unit A, Oakbrook Terrace, IL 60181.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, § 1332 and § 1367(a) because (i) Counts I and II arise under federal regulations, (ii) the state law claims in Counts III through VII rely entirely on the same operative facts as Counts I and II over which this Court has original jurisdiction, and; (iii) Plaintiff, a citizen of North Carolina, suffered damages in excess of $75,000 because of Defendant's, a citizen of Illinois, actions as alleged in Counts I through VII.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because (i) Defendant, Southway Carriers, Inc., is a resident in this judicial district, (ii) a substantial part of the events or omissions giving rise to Plaintiff's and the Class's claims occurred in this judicial district, and (iii) and the Defendant is subject to personal jurisdiction in this judicial district because it transacts business here and caused tortious injuries by an act or omission here.

**The Truth-in-Leasing Regulations**

7.　　The federal Truth-in-Leasing regulations, 49 C.F.R. § 376.1, *et seq.*, regulate the relationship between owner-operators and authorized carriers.

8.　　The regulations require certain provisions are included in a written lease between an owner of equipment and an authorized carrier to protect independent operators from the unequal bargaining power and access to information possessed by carriers.

9.　　49 C.F.R. § 376.1 defines:

(a) "Authorized carrier." A person or person authorized to engage in the transportation of property as a motor carrier under the provisions of 49 U.S.C. 13901 and 13902.

(b) "Equipment." A motor vehicle, straight truck, tractor, semitrailer, full trailer, any combination of these and any other type of equipment used by authorized carriers in the transportation of property for hire.

(c) "Owner." A person (1) to whom title to equipment has been issued, or (2) *who, without title, has the right to exclusive use of equipment*, or (3) who has lawful possession of equipment registered and licensed in any State in the name of that person (emphasis added).

10.　　49 U.S.C. § 14102 authorizes the Secretary of Transportation ("Secretary") to require a motor carrier that uses motor vehicles not owned by it to have a written agreement with the owner.

11.　　49 U.S.C. § 13301 authorizes the Secretary to prescribe regulations to carry out this part.

12.　　With the Motor Carrier Safety Improvement Act of 1999, Congress transferred to the Federal Motor Carrier Safety Administration ("FMCSA") all powers related to motor carriers vested in the Secretary by chapters 133 through 149, codified at 49 U.S.C. § 113(f)(1).

13.　　The FMCSA through its delegated authority from the Secretary regulates lease agreements between owners and authorized carriers under 49 C.F.R. § 376.1, *et seq.*

3

14.     49 C.F.R. § 376.11 provides:

… "the authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions:

(a) There shall be a written lease granting the use of the equipment and *meeting the requirements contained in § 376.12*" (emphasis added).

15.     Through 49 C.F.R. § 376.12 every lease between an owner and an authorized

carrier must include:

(d)     The amount to be paid by the authorized carrier for equipment and driver's services *shall be clearly stated on the face of the lease or in an addendum which is attached to the lease.* Such lease or addendum shall be delivered to the lessor prior to the commencement of any trip in the service of the authorized carrier. An authorized representative of the lessor may accept these documents. The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount (emphasis added).

16.     Additionally, under 49 C.F.R. § 376.12(e):

(e)     The lease shall clearly specify the responsibility of each party with respect to the *cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items*. The lease shall clearly specify who is responsible for loading and unloading the property onto and from the motor vehicle, and the compensation, if any, to be paid for this service. (emphasis added).

17.     Under 49 C.F.R. § 376.12(f) the lease must specify:

(f)     The lease *shall specify that payment to the lessor shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of the authorized carrier.* The documentation required before the lessor can receive payment is limited to log books required by the Department of Transportation and those documents necessary for the authorized carrier to secure payment from the shipper. In addition, the lease may provide that, upon termination of the lease agreement, as a condition precedent to payment, the lessor shall remove all identification devices of the authorized carrier and, except in the case of identification painted directly on equipment, return them to the carrier. If the identification device has been lost or stolen, a letter certifying its removal will satisfy this requirement. Until this requirement is complied with, the

carrier may withhold final payment. *The authorized carrier may require the submission of additional documents by the lessor but not as a prerequisite to payment. Payment to the lessor shall not be made contingent upon submission of a bill of lading to which no exceptions have been taken.* The authorized carrier shall not set time limits for the submission by the lessor of required delivery documents (emphasis added).

18.     Under 49 C.F.R. § 376.12(g) the lease must allow access to information from which rates and charges are computed and imposes specific requirements on a carrier if an owner is compensated by a percentage of gross revenue:

> (g)     *When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill*, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill. *Regardless of the method of compensation, the lease must permit lessor to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed*, provided that where rates and charges are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed. The authorized carrier may delete the names of shippers and consignees shown on the freight bill or other form of documentation (emphasis added).

19.     The leasing regulations require any items which are charged back to the owner be clearly stated in the lease under 49 C.F.R. § 376.12(h):

> (h)     The lease shall *clearly specify all items* that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, *together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge* (emphasis added).

20.     49 C.F.R. § 376.12(i) requires:

> (i)     The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.

21.     49 C.F.R. § 376.12(j)

(j)     *Insurance.*

(1)     The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. *If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.* (emphasis added).

22.     If escrow funds are required, then the lease must include specific information

about the maintenance of the escrow account under 49 C.F.R. § 376.12(k):

(k)     *If escrow funds are required, the lease shall specify*:

(1)     The amount of any escrow fund or performance bond required to be paid by the lessor to the authorized carrier or to a third party.

(2)     The specific items to which the escrow fund can be applied.

(3)     That while the escrow fund is under the control of the authorized carrier, the authorized carrier shall provide an accounting to the lessor of any transactions involving such fund. The carrier shall perform this accounting in one of the following ways:

(i)     By clearly indicating in individual settlement sheets the amount and description of any deduction or addition made to the escrow fund; or

(ii)     By providing a separate accounting to the lessor of any transactions involving the escrow fund. This separate accounting shall be done on a monthly basis.

(4)     The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time.

(5)     That while the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis. For purposes of calculating the balance of the escrow fund on which interest must be paid, the carrier may deduct a sum equal to the average

advance made to the individual lessor during the period of time for which interest is paid. The interest rate shall be established on the date the interest period begins and shall be at least equal to the average yield or equivalent coupon issue yield on 91-day, 13-week Treasury bills as established in the weekly auction by the Department of Treasury.

(6)     The conditions the lessor must fulfill in order to have the escrow fund returned. At the time of the return of the escrow fund, the authorized carrier may deduct monies for those obligations incurred by the lessor which have been previously specified in the lease and shall provide a final accounting to the lessor of all such final deductions made to the escrow fund. The lease shall further specify that in no event shall the escrow fund be returned later than 45 days from the date of termination.

23.     An authorized carrier must adhere to and perform all the provisions that are required to be included in a written lease pursuant to 49 C.F.R. § 376.12.

24.     Critically under 49 U.S.C. § 14704(a)(2):

"(a)     In General. –

(2)     A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

(e)     Attorney's Fees. –
The district court shall award a reasonable attorney's fee under this section. The district court shall tax and collect that fee as part of the costs of the action."

25.     Actions under 49 U.S.C. § 14704(a)(2) are subject to the "catch-all" statute of limitations period in 28 U.S.C. § 1658(a).

**FACTUAL ALLEGATIONS**

26.     On or about June 7, 2021, Plaintiff, Eric Rivers, and Defendant, Southway Carriers, Inc., entered a lease to purchase agreement for a 2017 Volvo truck ("Vehicle") attached as Exhibit 1.

27.     Upon information and belief, Exhibit 1 constitutes the entire lease agreement between Plaintiff and Defendant, including any addendums and/or attachments.

28.     Plaintiff operated the Vehicle through his wholly owned LLC, Rivers Logistics LLC.

29.     Per the terms of the agreement, Mr. Rivers paid $5,000.00 as a down payment and was to thereafter make weekly payments of $400.00 for 36 months, after which title to the vehicle would be transferred to Mr. Rivers for One Dollar ($1.00).

30.     Mr. Rivers proceeded to make $400.00 weekly payments from June 2021 through September 2022 for total of approximately $33,600 over a 16-month period including down payments.

31.     From June 2021 through September 2022, Mr. Rivers also incurred approximately $25,000.00 in costs, for necessary repairs and replacement parts for the Vehicle.

32.     Upon taking possession of the Vehicle, Plaintiff Eric Rivers had the right to exclusive use of the Vehicle for the duration of the lease and Mr. Rivers began completing routes solely for Southway.

33.     During the lease period, Southway controlled the manner of Mr. Rivers' transport business by requiring all of Plaintiff's operations run through an account that Southway controlled.

34.     More specifically, Southway acted as Mr. Rivers' dispatcher for the transport business, notifying Plaintiff of all shipping business, crediting all compensation through a single account, which Mr. Rivers used to pay all fuel and other expenditures for operation of the Vehicle.

35.     Southway used this account both to credit compensation to Mr. Rivers, and to charge Plaintiff for escrow payments, insurance payments, and weekly lease charges.

36.     Mr. Rivers was to use this account as well for credit card charges for fuel, repairs,

and other expenses, for which he was the actual cost bearer.

37.     In making trip assignments, Southway acted as Mr. Rivers' trip broker, charging commission at 18% of trip compensation.

38.     In making the trip assignments, Southway often claimed or secretly withheld an 18% commission or more, even on trip compensation, even where the amount of such charges should have been transparently disclosed and passed through to Mr. Rivers, as the ultimate cost bearer.

39.     Southway's failure to comply with the Truth-in-Leasing regulations and concealment of the requisite information makes it difficult for Mr. Rivers to determine the exact compensation he was owed upon the completion of a trip.

40.     On or about September 26, 2022, Mr. Rivers contacted Southway upon Plaintiff's belief Southway was withholding all or portions of compensation, including fuel surcharges, owed to Mr. Rivers.

41.     Authorized carriers are allowed to charge fuel surcharges at set rates to customers in times of high fuel prices.

42.     Southway charged customers fuel surcharges on routes completed by Plaintiff on August 19, 2022, and August 22, 2022, as shown in Exhibits 3 through 4.

43.     Southway received 18% of the total fuel surcharges by including the fuel surcharges in the total flat rate, which Defendant then used to calculate its 18% commission, as shown in Exhibits 5 and 6.

44.     It is industry custom and practice for the owner-operators, who actually bear the direct cost of high fuel prices, to receive the entire fuel surcharge invoiced to the customer.

45.     It is nearly impossible for owner-operators to profit without passing-through the

fuel surcharge during times of high fuel prices.

46.     Upon information and belief, Southway has wrongfully charged an 18% commission on fuel surcharges for every trip Plaintiff has completed.

47.     Shortly after receiving Mr. Rivers' inquiries about Southway's excess charges, Defendant retaliated against him, informing him there was an issue with the agreement and demanding the return of the Vehicle.

48.     When Mr. Rivers raised questions about Defendant's charges against his account, Defendant wrongfully terminated the lease, repossessed the Vehicle, and kept all of Mr. Rivers' down payment and expenditures.

49.     Defendant refused to give Mr. Rivers an accounting upon the wrongful termination of the lease and repossession of the Vehicle.

50.     Upon information and belief, Southway has withheld money which Mr. Rivers is rightfully entitled in excess of $75,000. See Exhibit 2.

**COUNT I**
**Violations of Truth-in-Leasing Regulation 49 C.F.R. § 376.12**

51.     Plaintiff for himself and the class, repeats and realleges the facts and allegations contained in paragraphs 1 through 50 above, as if fully set forth herein.

52.     At all relevant times, there was in full force and effect in Illinois the federal Truth-in-Leasing regulations.

53.     Defendant breached Truth-in-Leasing regulation 49 C.F.R. § 376.12 (d); (e) (f); (g); (h); (i); (j) and (k) as detailed herein.

54.     The written lease agreement between Plaintiff and Defendant did not contain a provision which states the amount to be paid for use of the Vehicle or Plaintiff's services.

55.     No addendum was attached to the lease which provides information regarding

10

how Plaintiff was compensated.

56.     Upon information and belief, without clearly stating how Plaintiff would be compensated in the written lease agreement in violation of 49 C.F.R. § 376.12(d), Plaintiff was unaware Defendant was withholding monies rightfully owed to Plaintiff by, among other acts, failing to pass-through 100% of the fuel surcharges to the actual cost-bearer in accordance with industry custom and practice.

57.     The written lease agreement does not specify Plaintiff shall be paid within 15 days of the necessary documentation being submitted to Defendant.

58.     Defendant delayed payment to Plaintiff if all documentation received during a trip was not submitted to Defendant as shown in Exhibits 5 and 6.

59.     Upon information and belief, the documentation required by Defendant as a prerequisite to payment included documents beyond the logbooks required by the Department of Transportation or were not necessary to receive payment from the shipper.

60.     Additionally, as shown in Exhibit 7, on requested loads Defendant required Plaintiffs to submit bills of lading.

61.     Upon information and belief, Defendant required the submission of bills of lading as a condition of payment for the requested loads.

62.     Without the specific information concerning the payment period or the documentation required for payment in the written lease agreement in violation 49 C.F.R. § 376.12(f), Plaintiff is unable to ensure timely payment of compensation owed to Plaintiff which Defendant wrongfully withheld or delayed.

63.     The lease failed to specify that Defendant will give Plaintiff a rated freight bill nor does the lease contain any provision specifying Defendant will give Plaintiff a copy of the

information contained on a rated freight bill before or at the time of settlement.

64.     The lease does not specify Plaintiff may examine the documents from which rates and charges are computed.

65.     Without access to the information required be provided under 49 C.F.R. § 376.12(g), Plaintiff is unable to ensure Defendant was appropriately calculating Plaintiff's compensation resulting in Defendant withholding funds rightfully owed to Plaintiff.

66.     Defendant deducted from Plaintiff's compensation items which were not clearly specified in the lease agreements.

67.     Items not specified in the lease but charged-back to Plaintiff, as shown in Exhibit 6 and Exhibits 8 through 10, include but are not limited to (i) tolls; (ii) charges labeled "Transflo"; (iii) charges labeled "WI006942"; (iv) trailer rent; (v) escrow payments; (vi) charges for "Accidental" insurance and; (vii) charges for an electronic logging device or ELD.

68.     The written lease agreement identifies a small number of charge-back items including but not limited to (i) tickets, violations, and citations; (ii) losses or damages to the Vehicle; (iii) "all taxes are license charges levied on, or assessed against, Vehicles leased under this Agreement"; (iv) repairs; (v) "oil, lubricant, tires, tubes, and all Other operating supplies and accessories that are necessary for proper and efficient operation of the Vehicles"; (vi) all fuel; (vii) towing services and; (viii) Comprehensive General Liability insurance, Business Automobile insurance, and excess liability umbrella coverage. Exhibit 1 at ¶¶ 2, 6, 7, 9, and 12.

69.     The lease failed to specify precisely how each item charged back to Plaintiff was computed.

70.     Upon information and belief, Defendant's obfuscation of which items can be charged-back and how charge-back items are computed violated 49 C.F.R. § 376.12(e), (h), and

(j) and has allowed Defendant to wrongfully charge-back items against Plaintiff's account.

71.     The written lease agreement was void of any terms which gives Defendant the right to make deductions for Vehicle purchase payments from Plaintiff's compensation.

72.     Beginning at the execution of the lease agreement through August 30, 2022, Defendant made sixty-four (64) deductions of $400.00 each, as shown by Exhibit 6, for a total of $25,600.00 from Plaintiff's compensation for truck payments.

73.     The lease is also void of any mention that Plaintiff was not required to purchase or rent any products, equipment, or services from Defendant as a condition of entering into the lease.

74.     Upon information and belief, Plaintiff was required, contrary to 49 C.F.R. § 376.12(i), to purchase or rent products from Defendant, as shown in Exhibits 6 through 9, including but not limited to (i) payments for an ELD; (ii) trailer rent; (iii) charges to use Transflo and; (iv) payments labeled "WI006942".

75.     Upon information and belief, Plaintiff was required to maintain an escrow account with Defendant from which payments can be deducted.

76.     Defendant deducted ten (10) payments of $250.00 from Plaintiff's compensation for a total of $2,500.00 labelled as "Escrow" with the final deduction occurring on August 24, 2021, as shown in Exhibit 9.

77.     The lease agreement does not include any information regarding an escrow account, maintenance of the escrow account, what the escrow account can be used for, Plaintiff's right to demand an accounting or Plaintiff's obligations for the return of the escrow fund, all in violation of 49 C.F.R. § 376.12(k).

78.     Upon information and belief, Plaintiff suffered damages in excess of $75,000 as a

result of Defendant's failure to adhere to and perform the Truth-in-Leasing regulation's required provisions.

### COUNT II
### Violation of Pass-Through of Motor Carrier Fuel Surcharge
### Adjustment to Cost Bearer 48 C.F.R. § 252.247-7003

79.     Plaintiff for himself and the class, repeats and realleges the facts and allegations contained in paragraphs 1 through 50 above, as if fully set forth herein.

80.     Under 48 C.F.R. 212.301:

(f)     The following additional provisions and clauses apply to DoD solicitations and contracts using FAR part 12 procedures for the acquisition of commercial items…
          (xx)    Part 247 – Transportation.

                  (A)     Use the clause at 252.247-7003, Pass-Through of Motor Carrier Fuel Surcharge Adjustment to the Cost Bearer, as prescribed in 247.207, to comply with section 884 of Pub. L. 110-417.

81.     48 C.F.R. 252.247-7003(b) requires a motor carrier contracting with the Department of Defense to "pass through any motor carrier fuel-related surcharge adjustments to the person, corporation, or entity that directly bears the cost of fuel for shipment(s) transported under this contract."

82.     Upon information and belief that Defendant improperly withheld fuel surcharges from Plaintiff on commercial contracts solicited from the Department of Defense.

### COUNT III
### Violation of the Consumer Fraud Act 815 ILCS 505/2

83.     Plaintiff for himself and the class, repeats and realleges the facts and allegations contained in paragraphs 1 through 50 above, as if fully set forth herein.

84.     At all relevant times, there was in full force and effect in Illinois the Illinois

Consumer Fraud Act, 815 ILCS 505/1, *et seq.* ("Consumer Fraud Act").

85.     Under the Illinois Consumer Fraud and Deceptive Business Practices Act, any

unfair or deceptive act or practice in the conduct of trade or commerce is actionable.  (815 ILCS

505/1, *et seq.*).  The statute expressly prohibits unfair or deceptive acts including concealment of

any material fact.

86.     Section 2 of the Consumer Fraud Act, 815 ILCS 505/2 provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including
> but not limited to the use or employment of any deception, fraud, false pretense,
> false promise, misrepresentation or the concealment, suppression or omission of
> any material fact, with intent that others rely upon the concealment, suppression
> or omission of such material fact, or the use or employment of any practice
> described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved
> August 5, 1965, in the conduct of any trade or commerce are hereby declared
> unlawful whether any person has in fact been mislead, deceived or damaged
> thereby.  In construing this section consideration shall be given to the
> interpretations of the Federal Trade Commission and the federal courts relating to
> Section 5(a) of the Federal Trade Commission Act.

87.     The Act expressly incorporates violations of the Uniform Deceptive Trade

Practices Act, 815 ILCS 510/1, *et seq.*, ("Uniform Act"), and the Uniform Act provides at

Section 2, 815 ILCS 510/2, in pertinent part:

> Section 2.       A person engages in a deceptive trade practice when, in the course
> of his business, vocation or occupation, he: ...
>
> (12)     engages in any other conduct which similarly creates a likelihood
> of confusion or of misunderstanding.

88.     In order to prevail in an action under the Consumer Fraud Act, a plaintiff need not

prove competition between the parties or actual confusion or misunderstanding.

89.     This Section does not affect unfair trade practices otherwise actionable at

common law or under other statutes of this State.

90.     Section 10(a) of the Consumer Fraud Act, states, in pertinent part:

(a) Any person who suffers damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual damages or any other relief which the court deems proper. Proof of public injury, a pattern, or an effect on consumers generally shall not be required...

(c) Except as provided in subsection (f), (g), and (h) of this Section, in any action brought by a person under this Section, *the Court may grant injunctive relief* provided in this Section, reasonable attorney's fees and costs to the prevailing party. (Emphasis added).

91. Plaintiff is a person under the Consumer Fraud Act, and the Defendant is a business under the Consumer Fraud Act.

**A Deceptive Act or Practice.**

92. Defendant's conduct to (i) conceal information required to be in the lease agreement and (ii) not turn over to class members withheld funds violates the Consumer Fraud Act as a material deceptive act or practice. The Defendant's concealment keeps an owner-operator from accurately tracking their compensation and recovering their full pay.

**Intent on the Defendants' Part that the Plaintiffs Rely on the Deception**.

93. The Defendant concealed material information from the Plaintiff and the class.

94. The Defendant is in the best position to comply with the leasing regulation and accurately report payment information to class members and by obfuscating the pay breakdown intended to keep the withheld funds indefinitely.

**Occurred in Trade and Commerce**.

95. Defendant's wrongful conduct, as alleged herein, occurred in trade and commerce and caused actual damages to Plaintiffs and members of the class.

**An Unfair Practice**.

96. The Defendant's scheme is also unfair.

97. The Defendant's policy is unethical and is oppressive and unscrupulous because it

was done for its own profit at the expense of the Plaintiff and class members, causing substantial injury.

## COUNT IV
## Breach of Contract

98.     Plaintiff for himself and the class, repeats and realleges the facts and allegations contained in paragraphs 1 through 50 above, as if fully set forth herein.

99.     The lease to purchase agreement entered by Plaintiff and Defendant was a contract wherein Plaintiff agreed to pay Defendant under the terms of the agreement in exchange for exclusive use of the vehicle with the option to buy the Vehicle upon completion of the weekly payments.

100.     Under the terms of the agreement, default is defined as:

17.     The following events, without limitation, shall constitute default under the Lease:

(a) the nonpayment of Rental by Lessee for a period of five (5) days of any sum required to be paid by Lessee.

(b) The nonperformance of Lessee of any other term, condition or covenant of this Lease that is not cured with two days after notice of nonperformance from Lessor.

101.     Plaintiff was not in default when Defendant breached the agreement by wrongfully repossessing Plaintiff's Vehicle.

102.     Plaintiff has lost compensation from a lack of access to the Vehicle as well as Defendant charging Plaintiff all costs related to the wrongful repossession.

## COUNT V
## Equitable Accounting

103.     Plaintiff for himself and the class, repeats and realleges the facts and allegations contained in paragraphs 1 through 50 above, as if fully set forth herein.

104.     Defendant is in exclusive access to information including any rebates, discounts, or fuel surcharges charged to its customers but withheld from the total compensation paid to Plaintiff.

105.     Plaintiff is unable to determine precisely the total harm caused by Defendant's breaches of contract and violations of the Truth-In-Leasing regulations without the information in Defendant's control.

## COUNT VI
## Unjust Enrichment

106.     Plaintiff for himself and the class, repeats and realleges the facts and allegations contained in paragraphs 1 through 50 above, as if fully set forth herein.

107.     Defendant has unjustly retained a significant portion of the compensation owed to Plaintiffs and class members to their detriment (i) by failing to adhere to the federal Truth-in-Leasing regulations; (ii) violating the Illinois Consumer Fraud Act and; (iii) violating Illinois common law.

108.     Defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience because the Defendant should have followed the federal regulations and state law and provided Plaintiff with all compensation earned from June 2021 through September 2022.

109.     Defendant is in possession of money that unequivocally belongs to Plaintiff and class members and is retaining it inequitably.

## COUNT VII
## Conversion

110.     Plaintiff for himself and the class, repeats and realleges the facts and allegations contained in paragraphs 1 through 50 above, as if fully set forth herein.

111. Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time.

112. Defendant has unauthorized and wrongful control, dominion, or ownership over Plaintiff's property, by its excessive holding and retaining of compensation owed to Plaintiff and not turning it over to Plaintiff.

113. The Plaintiff and class members who completed routes for Defendant have a right to the immediate possession of the property, absolutely and unconditionally.

114. At all times the property claimed, belonged to the class members and that the Defendant converted it to its own use by failing to turn it over.

115. Plaintiff's inquiry into Defendant's withholding compensation in ¶ 40 and the class action complaint constitutes a demand.

116. The "unauthorized and wrongful assumption" of the money is alleged by the Defendant's continued retention of this money for an indefinite period of time.

**Class Action Allegations**

117. Plaintiff for himself and the class, repeats and realleges the facts and allegations contained in paragraphs 1 through 50 above, as if fully set forth herein.

118. It is believed that Southway had similar or identical lease to purchase agreements with at least 50 other similarly situated drivers.

119. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and proposes to represent the following class:

All persons and entities that entered and operated under a lease to purchase agreement with Southway Carriers, Inc., during the applicable limitations periods for all Counts.

Excluded from the Class are: (a) any judge or magistrate judge presiding over this action and members of their families; (b) Southway Carriers, Inc., and any entity in which it has a controlling interest, or which has a controlling interest in Southway and Southway's

19

legal representatives, assigns and successors; (c) and all persons who properly execute and file a timely request for exclusion from the Class.

120.    The class ("Class"), as defined above, meets the prerequisite requirements of Rule 23(a), (b)(2), and (b)(3):

121.    *Numerosity*: The Class is composed of over fifty (50) geographically dispersed persons, the joinder of whom in one action is impractical.

122.    *Commonality*: Questions of law and fact common to the Class exist as to all proposed members and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include, but are not limited to the following:

    a.  Whether there are written lease agreements between Defendant and Class members;

    b.  Whether the terms of the lease agreements complied with federal regulations;

    c.  Whether Defendant's conduct as alleged is misleading, deceptive, and/or unconscionable;

    d.  Whether Defendant's withholding of compensation was unjust or inequitable;

    e.  Whether Plaintiffs and Class members are entitled to compensatory damages, including, among other things: (i) compensation for all monies withheld from class members; and (ii) compensation for all monies over-charged to class members;

    f.  Whether Plaintiffs and Class members are entitled to injunctive relief.

123.    *Typicality*: Plaintiff's claims are typical of the claims of the proposed members of the Class, as all such claims arise out of Defendant's conduct in using a standard lease agreement with owner-operators in the trucking industry which does not conform to federal regulation, providing incomplete documentation to owner-operators, and improperly compensating owner-

operators.

124.    *Adequate Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the proposed Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including consumer class actions.

125.    *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members. Additionally, a class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the Class is impracticable. Should Class members be required to bring separate actions, this Court and courts throughout Illinois and the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication of common issues, economies of scale and comprehensive supervision by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for judgment against the Defendant as follows:

1.    For an order certifying the Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative and appointing Clinton A. Krislov and Krislov & Associates, Ltd. as Class Counsel.

2.      As to all Counts:

    a.    Award Plaintiff and Class injunctive relief – notice and ability to claim their funds;

    b.    Award Plaintiff and class members their actual and compensatory damages, restitution and interest;

    c.    Award reasonable attorney's fees;

    d.    Award costs; and

    e.    Grant such further relief as the Court may deem just and proper.

## JURY DEMAND

The plaintiffs by and through legal counsel hereby demand a jury in this case.

Respectfully submitted,
Plaintiff: Eric Rivers

By their Attorneys:
/s/ Clinton A. Krislov

Clinton A. Krislov
Kenneth T. Goldstein
Matthew G. Norgard
KRISLOV & ASSOCIATES, LTD
20 Wacker Drive, Suite 1006
Chicago, IL 60606
(312) 606-0500
clint@krislovlaw.com
ken@krislovlaw.com
mnorgard@krislovlaw.com