**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ERIC RIVERS, VIDAL McCLAURIN,** | ) | |
| **and ARRION FORD, on behalf of all** | ) | |
| **other similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 738** |
| | ) | |
| **SOUTHWAY CARRIERS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Eric Rivers, Vidal Mclaurin, and Arrion Ford are truck drivers who have sued Southway Carriers, Inc. for violations of the federal Truth-in-Leasing Act (Count 1); the Fair Labor Standards Act (FLSA) (Count 2); the Illinois Wage Payment and Collection Act (IWPCA) (Count 3); a federal regulation allegedly relating to pass-through of fuel surcharge adjustments (Count 4); the Illinois Consumer Fraud Act (Count 5); and for breach of contract (Count 6), an equitable accounting (Count 7), unjust enrichment (Count 8), and conversion (Count 9). The Court previously dismissed Counts 4, 5, and 9 for failure to state a claim, as well as Count 2 as to plaintiffs Rivers and Mclaurin, but not as to plaintiff Ford.

The plaintiffs have moved to certify the case as a class action under Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) with regard to Counts 1 and 3 through 9. They have also moved to certify a collective action under 29 U.S.C. § 216(b) with regard to Count 2. The Court declines to consider certification regarding the

Counts already dismissed.  For the following reasons, the Court grants the plaintiffs' motion for certification under Rule 23 with regard to Counts 1 and 3 and grants conditional certification under section 216(b) regarding Count 2.  The Court denies the motion with regard to Counts 6, 7, and 8.

## Background

Southway Carriers, Inc. is an Illinois corporation headquartered in Oakbrook Terrace.  It operates as a motor carrier that engages commercial truck drivers to provide freight hauling services under written "Lease Agreements" and "Lease-to-Purchase" Agreements.  In 2021—2022, Rivers, Mclaurin, and Ford all signed such agreements with Southway and began hauling freight only for the company.  Rivers entered into a Lease-to-Purchase Agreement, Mclaurin entered into a Lease Agreement, and Ford entered into both a Lease Agreement and Lease-to-Purchase Agreement.

The Lease-to-Purchase Agreement addresses a relationship between the parties under which the lessee would have the opportunity to own the truck after a set number of payments over a fixed period.  This agreement does not set out any terms of driver compensation or authorize the Southway to make deductions from driver compensation. Its limited terms include requirements that the lessee provide for maintenance and repairs at the lessee's expense, as well as things like lubricant, tires, tubes and other accessories necessary for operation of the truck.  It also requires the lessee to maintain and provide proof of general liability insurance, business automobile insurance, and excess liability umbrella coverage.

The Lease Agreement is more detailed.  It classifies the drivers as independent contractors.  It includes, among other things, a compensation schedule and escrow

specifics, insurance requirements and chargeback authorization, and driver rules of conduct.

The plaintiffs allege that Southway violated Truth-in-Leasing regulations by improperly delaying or withholding payment and making unauthorized deductions from their pay without consent or adequate disclosures. Among other things, all of the plaintiffs allege, at a minimum, improper deductions for charges labeled "Transflo," "WI006942," "Accidental" insurance, and charges for an electronic logging device. All of them also allege that there are deficiencies in the terms of both agreements that make them noncompliant with Truth-in-Leasing requirements.

The plaintiffs also allege that Southway misclassified drivers as independent contractors to avoid paying appropriate wages and other employee benefits in violation of the FLSA and IWPCA. On the question of misclassification, the plaintiffs contend that Southway controlled advertising, billing and negotiation with customers of the terms of shipment contracts. Southway acted as the plaintiffs' dispatcher, notifying them of all shipping business, monitoring and collecting data on their driving, and crediting all compensation through a single account from which Southway also deducted escrow payments, insurance payments, and lease charges. The plaintiffs were required to check in with Southway dispatch at least twice a day, at 9 a.m. and 9 p.m., complete pre-trip inspections, supervise loading and unloading cargo—including condition checks every eight hours for refrigerated loads, report equipment failures immediately twenty-four hours a day, and maintain a logbook for each trip. Mclaurin and Ford also allege that they contractually subject to immediate discharge for specific types of conduct, including dishonestly, immoral conduct, failure to immediately report an accident

3

resulting in injury or property damage, and failure to carry out instructions or a direct order of a supervisor.

## Discussion

### A.    Rule 23 analysis

The Court first notes that the plaintiffs have properly defined their proposed class: "All persons and entities that entered and operated under a 'Lease Agreements' or a 'Lease-to-Purchase' Agreement with Southway Carriers, Inc., during the applicable limitations periods for all Counts."  The parameters of the proposed class are clear and confine it to those persons who may have sustained similar harm by Southway's allegedly unlawful conduct.  Southway does not appear to challenge the definiteness or scope of the proposed class.

At the class certification stage, the Court does not "adjudicate th[e] case," but rather "select[s] the method best suited to adjudication of the controversy fairly and efficiently."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). Before a case may proceed as a class action, the plaintiffs must demonstrate the proposed class meets the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation.  *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017).  If Rule 23(a)'s requirements are satisfied, the proposed class must also meet the criteria for one of three categories provided in Rule 23(b).  The plaintiffs seek certification under both Rule 23(b)(2) and Rule 23(b)(3).  Rule 23(b)(2) applies to actions seeking final injunctive or declaratory relief on behalf of a class, and Rule 23(b)(3) applies to actions where common questions predominate and class treatment is superior to other methods of adjudicating the dispute.  Fed. R. Civ. P.

4

23(b)(2), (3).

### 1.    The claims at issue

In determining whether a class should be certified, a court "should begin by identifying the elements of the plaintiff's various claims: 'only by properly circumscribing the claims and breaking them down into their constituent elements can a district court decide which issues are common, individual, and predominant.'" *Simpson v. Dart*, 23 F.4th 706, 713–14 (7th Cir. 2022) (quoting *Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021)).  The Court begins by delineating the claims at issue.

As an initial matter, the plaintiffs purport to move for class certification on Counts 6, 7, and 8, but their submissions to the Court make no mention of these claims or the grounds on which class certification would be warranted.  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The plaintiffs have not shown, and have not attempted to show, that the requirements of Rule 23(a) (or, for that matter, Rule 23(b)) are met for these claims.  They have forfeited the point.  The Court therefore denies the motion for class certification with respect to these claims.

The plaintiffs' remaining claims, Counts 1 and 3, allege violations of the Truth-in-Leasing regulation and the IWPCA.

The plaintiffs allege violations of the Truth-in-Leasing regulations found at 49 C.F.R. § 376.12(d)-(k).  These regulations set out "required lease provisions" that must be "adhered to and performed by the authorized carrier" in leases between independent

truckers and authorized and federally regulated motor carriers. The authorized motor carrier in this case is Southway. The provisions of section 376.12 that the plaintiffs allege Southway violated are excerpted in relevant part below:

>  (d) Compensation to be specified. The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. . . .
>
>  (e) Items specified in lease. . . . The lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items. . . .
>
>  (f) Payment period. The lease shall specify that payment to the lessor shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of the authorized carrier. The documentation required before the lessor can receive payment is limited to log books required by the Department of Transportation and those documents necessary for the authorized carrier to secure payment from the shipper. . . . The authorized carrier may require the submission of additional documents by the lessor but not as a prerequisite to payment. Payment to the lessor shall not be made contingent upon submission of a bill of lading to which no exceptions have been taken. . . .
>
>  (g) Copies of freight bill or other form of freight documentation. When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill. Regardless of the method of compensation, the lease must permit lessor to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed, provided that where rates and charges are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed. The authorized carrier may delete the names of shippers and consignees shown on the freight bill or other form of documentation.
>
>  (h) Charge-back items. The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

(i) Products, equipment, or services from authorized carrier. The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.

(j) Insurance.

> (1) The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.

> . . .

(k) Escrow funds. If escrow funds are required, the lease shall specify:

> (1) The amount of any escrow fund or performance bond required to be paid by the lessor to the authorized carrier or to a third party.

> (2) The specific items to which the escrow fund can be applied.

> (3) That while the escrow fund is under the control of the authorized carrier, the authorized carrier shall provide an accounting to the lessor of any transactions involving such fund. The carrier shall perform this accounting in one of the following ways:

> (i) By clearly indicating in individual settlement sheets the amount and description of any deduction or addition made to the escrow fund; or

> (ii) By providing a separate accounting to the lessor of any transactions involving the escrow fund. This separate accounting shall be done on a monthly basis.

> (4) The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time.

> (5) That while the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis. For purposes of calculating the balance of the escrow fund on which

interest must be paid, the carrier may deduct a sum equal to the average advance made to the individual lessor during the period of time for which interest is paid. The interest rate shall be established on the date the interest period begins and shall be at least equal to the average yield or equivalent coupon issue yield on 91–day, 13–week Treasury bills as established in the weekly auction by the Department of Treasury.

(6) The conditions the lessor must fulfill in order to have the escrow fund returned. At the time of the return of the escrow fund, the authorized carrier may deduct monies for those obligations incurred by the lessor which have been previously specified in the lease, and shall provide a final accounting to the lessor of all such final deductions made to the escrow fund. The lease shall further specify that in no event shall the escrow fund be returned later than 45 days from the date of termination.

49 C.F.R. § 376.12(d)-(k).

All of the named plaintiffs allege that Southway repeatedly and consistently violated section 376.12 in the following ways. First, they allege that Southway violated subsection 376.12(f) by requiring them to submit excess documentation, including bills of lading, as a prerequisite for payment. In addition, they allege that Southway violated subsection 376.12(g) because the Lease-to-Purchase Agreement and Lease Agreements did not include provisions allowing drivers to examine the documents from which rates and charges are computed or requiring Southway to provide copies of information contained on a rated freight bill, and also because Southway withheld that information. The plaintiffs also allege that Southway violated subsection 376.12(e) and (j) by making compensation and insurance deductions that were not clearly specified in the Lease or Lease-to-Purchase Agreements, and it violated (h) by failing to specify how chargebacks were computed and provide accompanying documentation. In addition, all plaintiffs allege improper deductions labeled "Transflo," "WI006942," "Accidental" insurance, and charges for an electronic logging device. They also allege that Southway violated subsection 376.12(i) because the Lease and Lease to Purchase

8

Agreements omitted the disclosure that lessees were not required to purchase or rent products or services from Southway as a condition of entering the agreements. They further contend that Southway did, in fact, require drivers to purchase or rent products from Southway. Finally, the plaintiffs allege that Southway violated subsection 376.12(k) by failing to return escrow payments with interest at the termination of their Lease to Purchase and Lease Agreements.

Plaintiff Rivers asserts additional claims that Southway violated subsection 376.12(d) and (f) because the Lease-to-Purchase Agreement did not state his compensation amount or timing. He also claims an additional violation of subsection 376.12(k) on the basis that he was required to place funds in escrow, but the Lease-to-Purchase Agreement did not include any of the required specifications regarding the parameters and use of the escrow fund.

The plaintiffs also contend that Southway violated the IWPCA and Illinois law by misclassifying them as independent contractors rather than employees and by failing to pay timely wages earned. *See* 820 Ill. Comp. Stat. 115/4. They contend the Lease and Lease-to-Purchase Agreements were unlawful because the agreements did not provide for the same amount of deduction each pay period or allow the plaintiffs to voluntarily withdraw from the deduction. As a result, the plaintiffs say, they were unable to freely give consent to various deductions Southway made, as was required by IWPCA. *See id.* § 115/9.

     **2.**    **Rule 23(a) requirements**

        **a.**    **Numerosity**

Southway does not contest that Rule 23(a)'s numerosity requirement is satisfied,

but the Court addresses it nonetheless. Rule 23(a)(1) requires a showing that the class is "so numerous that joinder of all members is impractical." Plaintiffs are not required to prove an exact number of class members to satisfy this standard, but they must provide more than "mere speculation or conclusory allegations as to the size of the putative class." *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008). The Seventh Circuit has recognized that a class of 40 members is generally sufficient. *Mulvania*, 850 F.3d at 859.

As stated previously, the proposed class is defined as "[a]ll persons and entities that entered and operated under a 'Lease Agreement' or a 'Lease-to-Purchase' Agreement with Southway Carriers, Inc., during the applicable limitations periods for all Counts." In their complaint, the plaintiffs estimated there were fifty other similarly situated drivers in the putative class. Second Am. Compl. ¶ 52. Now, based on a Southway production documenting the total number of operators each year from 2013-2022, they suggest that the number of proposed class members is approximately 550 drivers. This number is likely an overestimate. The plaintiffs simply added the "Total Number of Operators" for each of the nine years together, which assumes that no operator drove in more than one year. There is a good chance that the opposite is true and that the numbers for each year overlap. Still, there are anywhere from thirty-eight to seventy-two operators active at any given time during the listed years, so the potential class size is clearly over 40. The numerosity requirement is therefore satisfied.

### b. Commonality

Rule 23(a)(2) requires a showing that there are questions of law and fact

common to the class. Commonality is satisfied if the claims of proposed class members "depend upon a common contention that is capable of class-wide resolution." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). "A common nucleus of operative fact is usually enough to satisfy" this requirement. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The Court finds that the commonality requirement is satisfied for both the Truth-in-Leasing and IWPCA claims.

Both the Truth-in-Leasing and IWPCA claims operate from a common nucleus of operative fact. Specifically, the claims are centered on the contents of identical or substantially similar Lease Agreements and Lease-to-Purchase Agreements and those agreements' compliance with federal and state law. The named plaintiffs and putative class members all entered into and operated under Lease or Lease-to-Purchase Agreements with Southway that governed their relationship with the company. The agreements place the same or at least common burdens on the drivers and, under the authority of the agreements, Southway is alleged to have engaged in a uniform course of conduct vis-à-vis all of the drivers, involving withheld payments, withheld disclosures, and deductions from compensation. The legality of the agreements and of Southway's alleged conduct under the Truth-in-Leasing regulations and the IWPCA are common questions for the entirety of the putative class, and the resolution of these questions will drive the outcome of the litigation.

Southway relies on *Brant v. Schneider National Inc.*, 43 F.4th 656, 679 (7th Cir. 2023), to argue that a driver must show that the carrier violated one or more of the Truth-in-Leasing regulations and that the driver was damaged as a result. But in *Brant*,

the Seventh Circuit was reviewing a motion to dismiss; it concluded that the plaintiff had sufficiently alleged a breach of the FLSA. *Brandt* does not stand for the proposition that plaintiffs are required to prove the merits of their claims in order to demonstrate commonality in seeking class certification. Nor could it; the Seventh Circuit has made clear that plaintiffs are not required to prove the merits during Rule 23 certification. *See Chi. Teachers Union, Local No. 1*, 797 F.3d at 444.

The Court finds that the commonality requirement is satisfied.

### c. Typicality

"A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). "[T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," but the named plaintiffs' claims should "have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

The plaintiffs' and the potential class members' claims arise from the same alleged course of action by Southway: the alleged misclassification of drivers as independent contractors and improper deductions from and withholding of their wages, all under the auspices of allegedly unlawful Lease or Lease-to-Purchase agreements that governed relationship between the members of the putative class and Southway. This course of conduct covers both the Truth-in-Leasing and IWPCA claims, and the legal theories of the class members are uniform within each claim—they contend that

Southway's alleged common course of conduct violated the applicable law.

The fact that plaintiff Rivers signed only a Lease-to-Purchase Agreement and plaintiff Mclaurin signed only a Lease Agreement does not render their claims atypical. As the Court has indicated, the allegedly unlawful course of conduct giving rise to the claims is the same across both agreements. And the existence of some factual distinctions between named plaintiffs and other class members is acceptable—in the sense that it does not defeat class certification—if the plaintiffs' and the class members' claims have the same essential characteristics. In this case, they do: the plaintiffs entered into at least one of two standard, and allegedly unlawful, agreements governing their business relationship with Southway, and they were then subjected to a course of conduct under the authority of the agreement(s) that is alleged to have violated the law. The same is likewise true of the unnamed members of the class. The typicality requirement is therefore satisfied.

### d. Adequacy

The final Rule 23(a) requirement is that the named plaintiff "fairly and adequately protect the interest of the class." Fed. R. Civ. P 23(a)(4). In evaluating adequacy, courts assess "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests," and "the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

Southway argues that plaintiffs cannot meet their burden of showing adequacy "where they do not submit evidence that would allow for a comparison of the claims and defenses relevant to Plaintiffs and other class members." Def.'s Resp. at 12. This

argument lacks merit. The plaintiffs have submitted documentation of their claims that is adequate at the current stage of the litigation. Though it is true that a proposed class representative may be inadequate if he is subject to a defense not applicable to the class as a whole, *see, e.g., CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011), Southway has identified no defenses that are unique to any of the named plaintiffs.

The Court further concludes, and Southway does not dispute, that class counsel have demonstrated their adequacy. *See* Fed. R. Civ. P. 23(g). Accordingly, the plaintiffs have satisfied the adequacy requirement.[1]

### 3. Rule 23(b) requirements

The Court next turns to the requirement that the proposed class satisfy "at least one of the branches of rule 23(b)." *Mulvania*, 850 F.3d at 859. The plaintiffs seek certification under both Rule 23(b)(2), which applies to actions seeking final injunctive or declaratory relief, and Rule 23(b)(3), which applies where common questions of law or fact predominate and class treatment is a superior method of adjudication. Fed. R. Civ. P. 23(b)(2), (3). A class may be certified under both Rule 23(b)(2) and 23(b)(3) only "where there is a real basis for both damages and an equitable remedy." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011).

### a. Rule 23(b)(2)

Rule 23(b)(2) allows class certification if "the party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

---

[1] This is so despite recent, and unfortunate, passing of lead counsel Clinton Krislov.

14

Fed. R. Civ. P 23(b)(2).  Certification under this rule is appropriate only "when a single injunction or declaratory judgment would provide relief to each member of the class."  *Wal-Mart Stores, Inc.*, 564 U.S. at 360.  It does not permit certification when each putative class member would require a different or individual injunction or declaratory judgment against the defendant.  *Id.*  A 23(b)(2) class also "cannot seek money damages unless the monetary relief is incidental to injunctive or declaratory relief."  *Chi. Teachers Union, Local No. 1*, 797 F.3d at 443.  Where the money damages sought are more than incidental to the equitable relief requested, "then the district court should either certify the class under Rule 23(b)(3) for all purposes or bifurcate the proceedings—certifying a Rule 23(b)(2) class for equitable relief and a Rule 23(b)(3) class for damages."  *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 899 (7th Cir. 1999).

The plaintiffs argue that they satisfy the requirements of Rule 23(b)(2) because they seek a declaratory judgment that Southway's Lease and Lease-to-Purchase Agreements violated applicable law, a determination that would apply on a classwide basis and would require Southway to bring its agreements into compliance with state and federal law.  Though the plaintiffs' arguments on this point are sparse, the Court agrees that their request for declaratory relief regarding (at a minimum) the legality of the agreements would apply classwide.  This is true regarding both the Truth-in-Leasing and IWPCA claims.

Southway contends that the plaintiffs in this case do not truly seek an equitable remedy that would afford final relief but instead seeks damages.  This argument is unavailing.  Southway relies on *Kartman* to argue that Rule 23(b)(2) "is not appropriately invoked for adjudicating common issues in an action for damages."  *Kartman*, 634 F.3d

15

at 895.  Though Southway recites this legal proposition correctly, the circumstances present in *Kartman* are absent in this case.  The plaintiffs in *Kartman* sought certification only under 23(b)(2) and, as the Seventh Circuit summarized, they "dressed up what was really a claim for money damages (in the form of insurance payments) in injunctive clothing by asking that the court order the insurance company to evaluate their hail-damaged roofs under a uniform and objective standard." *Chi. Teachers Union, Local No. 1*, 797 F.3d at 443.  The Seventh Circuit determined that the injunction requested in *Kartman* would not provide final relief as required by Rule 23(b)(2) because it would "merely lay an evidentiary foundation for subsequent determinations of liability." *Kartman*, 634 F.3d at 893.  There was no independently actionable claim based on the insurer's failure to use a uniform and objective standard for evaluating hail damage; "classwide roof reinspection would only initiate thousands of individualized proceedings to determine breach and damages." *Id.*

The plaintiffs in this case are not attempting to shoehorn their damages claim into the Rule 23(b)(2) framework.  They have bifurcated their claims, "siphon[ing] that portion of the complaint that requested monetary relief and individual remedies into a request for 23(b)(3) class certification." *Chi. Teachers  Union, Local No. 1*, 797 F.3d at 443.  Moreover, the injunctive relief requested in this case would be final, providing a prospective remedy to prevent ongoing and future unlawful activity.

Southway's allusions to *Randall v. Rolls-Royce Corp.*, 637 F.3d 818 (7th Cir. 2011), falter for similar reasons.  The plaintiffs in *Randall* also failed to bifurcate their claims for Rule 23 purposes, pursued certification only under Rule 23(b)(2), and sought equitable relief that was "*mainly* monetary." *Randall*, 637 F.3d at 825.    In sum, this

case is closer to *Chicago Teachers Union*, where the plaintiffs sought a declaratory judgment that school board policy violated Title VII as a 23(b)(2) class and separated their request for monetary relief into a request for 23(b)(3) class certification. *Chi. Teachers Union, Local No. 1*, 797 F.3d at 443-44. In granting certification in *Chicago Teachers Union*, the Seventh Circuit stated that a court's determination that "'plaintiffs' request for a declaration that the [] policy violates federal law would apply class wide' . . . should have ended the matter and convinced the court the certify the 23(b)(2) class." *Chi. Teachers Union, Local No. 1*, 797 F.3d at 442. That is the case here.

### 3.      Rule 23(b)(3)

Certification under Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any question affecting individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof," and it does not require that common questions will be answered, on the merits, in favor of the class. *Chi. Teachers Union, Local No. 1*, 797 F.3d at 444 (quoting *Amgen Inc.*, 568 U.S. at 469). Instead, the "predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012). To put it another way, "[i]ndividual questions need not be absent"; Rule 23 "requires only that those [individual] questions not predominate over the common questions affecting the class as a whole." *Id.* at 815.

17

The central inquiry on plaintiffs' Truth-in-Leasing claim is whether the Lease and Lease-to-Purchase Agreements violated the Truth-in-Leasing Act. The putative class members all signed one or both of the agreements, and they allege similar, if not identical, violations—among them, whether Southway made insurance and compensation deductions and chargebacks that were not specified in the agreements, in violation of 49 C.F.R. § 376.12(e), (h) and (j), and whether Southway violated subsection 376.12(g) by failing to provide certain documentation regarding how drivers' rates and charges were computed and omitting from the agreements the requirement to provide such documentation. All of the class members were subject to these agreements, or at least to one of them. Thus the questions the Court has identified regarding the lawfulness of the Agreements' provisions can be answered on a classwide basis. There is no viable argument to the contrary.

To the extent there are individual questions regarding the alleged violation of subsection 376.12(f) relating to plaintiff Rivers, because his agreement evidently did not specify the terms of his compensation in any manner, that individual question does not predominate over common questions. In addition, it would be encompassed in an assessment of whether the Lease-to-Purchase Agreement as a whole is lawful.

Common questions also predominate for the claims of the class members under the IWPCA. The key issues under the IWPCA involve whether Southway misclassified drivers as independent contractors and made inappropriate withholdings from pay as a result, and whether the terms of the Lease and Lease-to-Purchase Agreements themselves violated the IWPCA and Illinois law. These, too, are questions that likely will be answered on a class-wide basis.

18

Contrary to what Southway suggests, Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen Inc.*, 568 U.S. at 466 (citation omitted). Even so, both the Truth-in-Leasing claims and the IWPCA claims are anchored in the lawfulness of the uniform Lease and Lease-to-Purchase Agreements, which likely will be determined based on common evidence. To the extent that Southway invites the Court to engage in a merits inquiry regarding whether it actually misclassified drivers and whether the deductions or agreements were actually lawful, that is inappropriate as part of the Rule 23 inquiry. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id*.

As to superiority, the class must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This applies to "cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Southway does not dispute that the superiority requirement is satisfied here. Based on the foregoing arguments regarding the common and predominate questions underlying Southway's potential liability to the putative class members, the Court finds that the class meets the superiority requirement for certification under Rule 23(b)(3).

## B.    FLSA conditional certification analysis

The Court turns next to the question of conditional certification of a collective action of the plaintiffs' FLSA claims under 29 U.S.C. § 216(b). If an employer fails to

pay the minimum wage to its employees, the FLSA allows a single employee to bring a collective action on behalf of herself and "other employees similarly situated." 29 U.S.C. § 216(b). Conditional certification under the FLSA is distinct from certification under Rule 23 because potential class members in a collective action "must opt into the suit to be bound by the judgment or settlement in it, while in a class action governed by Rule 23(b)(3) (a class action seeking damages) they must opt out not to be bound." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013). Still, district courts have "wide discretion to manage collective actions." *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010).

The Seventh Circuit has not endorsed a specific test for district courts to use when deciding whether to authorize conditional certification under section 216(b). Courts in this district, however, typically use a two-stage certification process—an approach the Seventh Circuit has acknowledged, without indicating approval or disapproval, in *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 n.5 (7th Cir. 2020). *See also, e.g., Brand v. Comcast Corp.*, No. 12 C 1122, 2012 WL 4482124, at *3 n.3 (N.D. Ill. Sept. 26, 2012) (collecting cases from this district). At the first stage, the Court primarily is determining whether notice of the pendency of the case should be sent to those similarly situated to the plaintiff. That is where the case is at this point. At the first stage, "the court applies a lenient standard, requiring the putative lead plaintiff to make a 'minimal showing' that other employees are similarly situated." *Dawkins v. NR 1 Transp., Inc.*, No. 20 C 4063, 2021 WL 4125086, at *10 (N.D. Ill. Sept. 8, 2021) (quoting *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510905, at *1 (N.D. Ill. Aug. 10, 2011)). The second stage takes place after discovery and completion of the

20

opt-in process, at which point the court engages in a "more stringent 'fact-intensive inquiry' to determine 'the veracity of the allegations that all putative claimants are similarly situated.'" *Dawkins*, 2021 WL 4125086 at *10 (quoting *Persin v. CareerBuilder, LLC*, No. 05 C 2347, 2005 WL 3159684, at *1 (N.D. Ill. Nov. 23, 2005)).

At the current stage, the plaintiff need only satisfy the "modest factual showing" requirement of step one. Doing so generally requires more than allegations in the complaint—the plaintiff typically must provide factual support like "affidavits, declarations, deposition testimony, or other documents." *Dawkins*, 2021 WL 4125086, at *10; *accord Anyere v. Wells Fargo Co.*, No. 09 C 2769, 2010 WL 1542180 (N.D. Ill. Apr. 12, 2010). The requirement for stage-one conditional certification is met if the plaintiffs show that they and the other " potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (quoting *Anyere*, 2010 WL 1542180, at *1).

Plaintiff Ford, the only plaintiff remaining for Count 2, has met this burden. Ford submitted copies of his own Lease Agreement and copies of the Lease Agreements belonging to three other drivers that are substantially identical to his. He contends these standard agreements are demonstrative of a pattern of misclassifying drivers as independent contractors rather than employees.

In addition to copies of the allegedly unlawful agreements signed by plaintiffs and other potential class members, Ford has also submitted four paychecks from Mclaurin, Correa, Abaz, and Damasco, which the plaintiffs say tend to show payment of less than the minimum wage. Looking at the Mclaurin and Correa paychecks, the Court can clearly infer those drivers were paid less than $7.25 per hour in the particular paychecks

that have been provided.  Southway admits as much in its brief.  This is in addition to documentation submitted with the complaint that reflected a week in which Ford was also compensated less than $7.25 per hour.  The other two paychecks that Ford has provided, for putative plaintiffs Damasco and Abaz, do not unequivocally reflect payment of under $7.25 per hour without some additional information regarding the number of hours worked during the period covered by the paychecks.  But even on the face of it, underpayment to Damasco is probable.  Damasco was paid $147.93 for driving 1,497 miles.  Unless he drove this in less than 20.4 hours, he was paid less than the $7.25 minimum wage.  It's highly unlikely he drove this distance in less than that time—doing so would have required him to *average* 73 miles per hour, which is likely above the speed limit even if Damasco somehow managed to drive *without stopping* for over 20 hours.

For these reasons, the Court finds that plaintiff Ford has met his burden for conditional certification.

## Conclusion

For the foregoing reasons, the Court grants the plaintiffs' motion for class certification and conditional collective certification [dkt. no. 40] in part, as follows.  With regard to Counts 1 and 3 of the second amended complaint, the Court certifies a class of plaintiffs consisting of all persons and entities that entered and operated under a "Lease Agreement" or a "Lease-to-Purchase" Agreement with Southway Carriers, Inc., during the applicable limitations periods for all Counts.  With regard to Count 2, the Court conditionally certifies a collective action including all persons and entities that entered and operated under a "Lease Agreement" or a "Lease-to-Purchase" Agreement

22

with Southway Carriers, Inc., during the applicable limitations periods for all Counts. The Court appoints attorneys Kenneth T. Goldstein and Matthew G. Norgard of Krislov & Associates, Ltd. as class counsel. The Court denies the plaintiffs' motion with regard to the remaining claims in their second amended complaint.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   February 13, 2024